UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| SARAH K. ROGERS, | ) | |
| | ) | 05-81437-BJH-7 |
| Debtor. | ) | |
| -------------------------------------------------------- | ) | |
| JACK C. WALLACE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-0619-G |
| SARAH K. ROGERS, | ) | |
| | ) | **ECF** |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is an appeal by Jack C. Wallace ("Wallace," "the creditor," or "the appellant") from a final order in the United States Bankruptcy Court for the Northern District of Texas. The appellant challenges the bankruptcy court's decision not to apply the restriction of 11 U.S.C. § 522(p) to the debtor's homestead. For the reasons stated below, the order of the bankruptcy court is affirmed.

I. BACKGROUND

This appeal stems from the creditor's effort to restrict the debtor's election of the virtually unlimited Texas homestead exemption. In 1994, the debtor, Sarah K. Rogers ("Rogers," "the debtor," or "the appellee"), inherited a 72.5 acre tract of real property known as 14849 Kelly Road, Forney, Texas ("the current homestead"). Hearing Transcript ("Transcript") at 5:23-25, Jan. 18, 2006; Response to Jack C. Wallace's Objection to Debtor's Claim of Exemption of Homestead ("Debtor's Response") ¶ 8. At the time of inheritance, the debtor was unmarried. *See* Debtor's Response ¶ 8. Subsequently, she married George E. Rogers; the couple, at all times material to the instant appeal, resided on a tract of real property purchased by the Rogers known as 8644 South F.M. 549, Rockwall, Texas ("the marital homestead"). Jack C. Wallace's Objection to Debtor's Claim of Exemption in Homestead ("Creditor's Objection") ¶ 7; Debtor's Response ¶ 1. The couple claimed the real property in Rockwall as their homestead and resided together on the property until their divorce in 2004. Creditor's Objection ¶ 8; Debtor's Response ¶ 3. In January of 2004, the debtor moved from the marital homestead to the current homestead. Creditor's Objection ¶ 17; Debtor's Response ¶ 9.

In the interim, the Rogers borrowed money from Wallace to embark on an ultimately unsuccessful business venture. *See* Creditor's Objection ¶ 4; Debtor's Response ¶ 1. On April 19, 2004, Wallace obtained a judgment in the 382nd

Judicial District Court, Rockwall County, Texas, against both the debtor and her now ex-husband George E. Rogers. *Id.* The judgment entered was for the total principal of $316,180.95, plus court costs and post-judgment interest. *Id.*

On September 28, 2005, the debtor filed for relief under Chapter 7 of the Bankruptcy Code. Docket Sheet, No. 05-81437-BJH-7. In her schedule with the bankruptcy court, the debtor elected to take the state exemptions in accordance with the general provisions of 11 U.S.C. § 522(b). Creditor's Objection ¶ 19; Debtor's Response ¶ 1. Under the Texas Constitution, Article XVI §§ 50 and 51, the state homestead exemption protects the homestead, without a monetary limit, from all but certain types of liens. Rogers claimed an interest in the real property constituting the current homestead in the amount of $359,000.00. Creditor's Objection ¶ 19; Debtor's Response ¶ 1. Wallace objected in a timely manner to the debtor's claimed homestead exemption, alleging that 11 U.S.C. § 522(p) would limit the debtor's homestead exemption at the federal statutory amount of $125,000 because the debtor's current homestead had not been her homestead for the 1,215-day period preceding her bankruptcy petition. Creditor's Objection ¶¶ 18, 20. Rogers filed a timely response, and Chief Bankruptcy Judge Barbara Houser denied Wallace's objection. Order Denying Objection to Homestead Exemption, February 7, 2006. This appeal followed.

## II. ISSUES

This appeal presents two related issues arising from the recently enacted 11 U.S.C. § 522(p): (1) does the characterization of real property as a homestead qualify as an "interest" within the phrase "debtor may not exempt any amount of interest," and (2) does the term "acquire," within the same phrase, include a change in the categorization of real property as a homestead?

## III. ANALYSIS

### A. Jurisdiction

This court exercises jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001. 28 U.S.C. § 158(a)(1); Bankruptcy Rule 8001.

### B. Standard of Review

In reviewing a decision of the bankruptcy court, this court functions as an appellate court and applies the standards of review generally applied in federal court appeals. *Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *Matter of Coston*, 991 F.2d 257, 261 n.3 (5th Cir. 1993) (en banc) (citing *Matter of Hipp, Inc.*, 895 F.2d 1503, 1517 (5th Cir. 1990)). Conclusions of law are reviewed *de novo*. *Matter of Herby's Foods, Inc.*, 2 F.3d 128, 131 (5th Cir. 1993). Findings of fact, on the other hand, whether based on oral or documentary evidence, are not to be set aside unless clearly erroneous, and due regard must be given to the opportunity of the bankruptcy

court to judge the credibility of the witnesses.  *See* Bankruptcy Rule 8013; see also *Herby's Foods, Inc.*, 2 F.3d at 130-31.  A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Matter of Missionary Baptist Foundation of America*, 712 F.2d 206, 209 (5th Cir. 1983) (quoting *United States v. United States Gypsum Company*, 333 U.S. 364, 395 (1948)).  Mixed questions of law and fact are reviewed *de novo*.  *Matter of National Gypsum Company*, 208 F.3d 498, 504 (5th Cir.), *cert. denied*, 531 U.S. 871 (2000).  Because the instant appeal involves only questions of law, the court's standard of review is *de novo*.

C.  Standard for Exemptions in Bankruptcy Proceedings

Under 11 U.S.C. § 522, a debtor in bankruptcy can exempt certain property from the bankruptcy proceedings and protect that property from subsequent attempts to collect on antecedent debts.  11 U.S.C. § 522(c).  Within § 522 is a list of various interests in property -- real and personal, tangible and intangible -- that a debtor can exempt.  *See* § 522(d).  However, the Bankruptcy Code provides an opt-out provision whereby the state either can require the debtor to exempt property under the state law exemptions or can grant the debtor the option of choosing between state exemptions and the § 522(d) exemptions.  *See* § 522(b)(2).  Certain states, such as Florida and Texas, provide for generous homestead exemptions.  *See* FLA. CONST. art. 10, § 4; TEX. CONST. art. 16, §§ 50, 51.  As part of the 2005 amendments to the

Bankruptcy Code, Congress enacted § 522(p)(1), which limits debtors' ability to take advantage of the state homestead exemptions. Section 522(p) in pertinent part reads:

> [A]s a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in --
>
> * * *
>
> (D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

The instant appeal centers on the application of § 522(p). The appellant argues that the classification of real property as a homestead is an "interest" in property and thus governed by the 1,215-day statutory period. Additionally, the appellant contends that the term "acquire" encompasses a shift in the property's classification. These arguments, if accepted by the court, would render the appellee's current homestead subject to the limitations of § 522(p), despite her having owned the property in question for eleven years prior to filing her bankruptcy petition, because the shift in categorization of the current homestead from non-homestead to homestead occurred within the 1,215-day statutory period. Due to the recency of the legislation at issue on this appeal, these are questions of first impression.

D.  Scope of the Term "Interest"

The meaning of the term "interest" as used within the Bankruptcy Code can be determined from only two possible sources.  If the statute is unambiguous, the court is to interpret the statute in accordance with its plain meaning and without regards to any extraneous materials.  See *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning . . .").  However, if the statute is ambiguous, then the court is to decipher the intent of Congress and interpret the statute accordingly.  See *United States v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005) ("When interpreting a statute, we begin with 'the language of the statute itself.'  . . .  If the statute is ambiguous, we may look to the legislative history . . .").

As a threshold matter, the court finds the language of § 522(p) to be unambiguous.  Though the Code at no point defines the term "interest," the plain meaning of the statute indicates that "interest" refers to some legal or equitable interest that can be quantified by a monetary figure.  There are at least three indicia within the plain meaning of the statute demonstrating that "interest" refers to such a quantitative measure.  First, the statute reads, "any *amount* of interest."  § 522(p)(1) (emphasis added).  The noun "amount" within its ordinary meaning refers to the "total number or quantity" or "the quantity at hand or under consideration".  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 39 (10th ed. 1998); see also *In re*

*Rasmussen*, ___ B.R. ___, 2006 WL 2588731, *7 (Bankr. M.D. Fla. Sept. 8, 2006) ("amount" is a quantitative term).  The second clue is that § 522(p) mandates that the "amount of interest" is not to exceed in the aggregate a specified dollar amount. 11 U.S.C. § 522(p)(1).  For the interest not to exceed $125,000, it inherently must be an interest capable of being reduced to a quantitative, monetary measure.

A further indication that the term "interest" refers to some quantitative measure is § 522(p)(2)(B), which allows for a roll-over of interest transferred from the sale of a debtor's previous homestead when the debtor's new homestead is within the same state.[1]  Under this provision, if a debtor owned a homestead prior to the 1,215-day period but within that period sold the homestead and used the proceeds to purchase a new homestead within the same state, then the "interest" from the sale of the first homestead would be exempt.  While equity in a home can be rolled over from one home to the next, it is impossible to imagine how the "interest" of categorization as a homestead could be transferred from one home to the next.

---

[1]       Section 522(p)(2)(B) reads:

> (B) For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.

To the extent that the appellant avers that under Texas state law the classification of a homestead is a legal interest separate from the fee simple, the court does not question that proposition. "[T]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the . . . constitutionally permitted liens against homesteads." *Dominguez v. Castaneda*, 163 S.W.3d 318, 329 (Tex. App.--El Paso 2005, pet. denied). However, the court concludes that because the language of the statute requires a quantitative, measurable interest, Congress could not have meant for the term "interest," in the context of § 522(p), to extend to all forms of legal or equitable interest in property. To read the statute as the appellant suggests would create nonsensical interpretations. For instance, how would it be possible to have a "quantity" of prophylactic protection from liens (the legal effect of homestead designation in Texas)? Or for that matter, how would it be possible to have a "quantity" of classification as homestead?

The court recognizes the conflict between its conclusion in this case and the result reached in *In re Greene*, 346 B.R. 835 (Bankr. D. Nev. 2006).[2] The debtor in *Greene*, Dr. Scott Greene ("Greene"), moved out of his single family residence and placed a travel trailer on a 67-acre tract of undeveloped land, which he purchased in 1994. *Id.* at 838. The following day, Greene recorded a declaration of homestead for

---

[2] The Nevada bankruptcy court issued the *Greene* opinion on July 27, 2006, after the close of briefing in the instant case. Therefore, neither party had the opportunity to address this recent case.

the parcel and travel trailer; sixteen days later he filed for bankruptcy. *Id.* Among other questions, the *Greene* court had to decide whether the shift in homestead classification regarding the property upon which Greene was then residing constituted an "amount of interest" within the meaning of § 522(p) since the homestead declaration was made within the 1,215-day statutory period but the purchase of the property was not. *Id.* The Nevada bankruptcy court stated that the language of § 522(p) "suggests that the phrase 'interest that was acquired' should be construed as applying to homestead property interests that the debtor gained through his or her actions or efforts in contemplation of filing bankruptcy." *Id.* at 841. However, at no point did the *Greene* court discuss the "amount of" modifier to the term "interest." Nor did the *Greene* court consider any of the other indicia demonstrating that "interest" was meant to encompass some quantitative measure.

The court finds *In re Rasmussen* to a better reasoned interpretation of § 522(p).[3] In *Rasmussen*, the bankruptcy court for the Middle District of Florida interpreted § 522(p) with regards to whether appreciation constitutes an acquired interest. *See* 2006 WL 2588731, *1. There, the debtors purchased the homestead at issue 1,210 days prior to the filing of the petition for a the price of $350,000; at the time of their bankruptcy filing, the homestead was valued at $750,000. See *id.* The *Rasmussen*

---

[3] As with *Greene*, the *Rasmussen* opinion was not issued prior to the filing deadline in the instant appeal. Thus, neither party had the opportunity to address the *Rasmussen* holding.

debtors claimed that their stacked homestead exemption under the § 522(p) cap left no *equity* for the estate to claim; they argued further that because appreciation was not an interest acquired by them, § 522(p) provided no remedy for the trustee to tap into the amount of appreciation.  *Id.*  The bankruptcy court agreed with the debtors, finding that appreciation did not constitute an acquired interest.  *Id.* at 8.  The *Rasmussen* court ultimately concluded that the term "interest" referred, not to an ownership interest equivalent to a fee simple, but to the equity in the property.  *Id.* at *6.  This opinion was based on the same principles of statutory interpretation set forth above:  the common definition of the term "amount"; the plain meaning of the statutory language; and the relationship between the language of § 522(p)(1) and § 522(p)(2)(B).  See *id.* at *6-7.

Because the court determines the statutory language of § 522(p) to be unambiguous, the court's inquiry as to the intent of Congress ends with the language of the statute itself.  By ruling that the term "interest" does not encompass the classification of real property as a homestead, the court concludes that the limitations of § 522(p) are wholly inapplicable to this case.  As this first issue on appeal is dispositive, the court does not reach the second issue regarding the meaning of the term "acquire."

## IV.  CONCLUSION

For the above stated reasons, the order of the bankruptcy court denying the creditor's objection is **AFFIRMED**.

**SO ORDERED**.

October 16, 2006.

*A. Joe Fish*
A. JOE FISH
CHIEF JUDGE